# UNITED STATES *v.* MILLER

No. 74–1179.  Argued January 12, 1976—Decided April 21, 1976

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, REHNQUIST, and STEVENS, JJ., joined. BRENNAN, J., *post,* p. 447, and MARSHALL, J., *post,* p. 455, filed dissenting opinions.

*Deputy Solicitor General Wallace* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Thornburgh, Sidney M. Glazer,* and *Ivan Michael Schaeffer.*

*D. L. Rampey, Jr.,* by appointment of the Court, 422 U. S. 1054, argued the cause and filed a brief for respondent.

MR. JUSTICE POWELL delivered the opinion of the Court.

Respondent was convicted of possessing an unregistered still, carrying on the business of a distiller without giving bond and with intent to defraud the Government of whiskey tax, possessing 175 gallons of whiskey upon which no taxes had been paid, and conspiring to defraud the United States of tax revenues. 26 U. S. C. §§ 5179, 5205, 5601 *et seq.;* 18 U. S. C. § 371. Prior to trial respondent moved to suppress copies of checks and other bank records obtained by means of allegedly defective subpoenas *duces tecum* served upon two banks at which he had accounts. The records had been maintained by the banks in compliance with the requirements of the Bank Secrecy Act of 1970, 84 Stat. 1114, 12 U. S. C. § 1829b (d).

The District Court overruled respondent's motion to suppress, and the evidence was admitted. The Court of Appeals for the Fifth Circuit reversed on the ground that a depositor's Fourth Amendment rights are violated when bank records maintained pursuant to the Bank Secrecy Act are obtained by means of a defective subpoena. It held that any evidence so obtained must be suppressed. Since we find that respondent had no protectable Fourth Amendment interest in the subpoenaed documents, we reverse the decision below.

I

On December 18, 1972, in response to an informant's tip, a deputy sheriff from Houston County, Ga., stopped a van-type truck occupied by two of respondent's alleged co-conspirators. The truck contained distillery apparatus and raw material. On January 9, 1973, a fire broke out in a Kathleen, Ga., warehouse rented to respondent. During the blaze firemen and sheriff department officials discovered a 7,500-gallon-capacity distillery, 175 gallons of non-tax-paid whiskey, and related paraphernalia.

Two weeks later agents from the Treasury Department's Alcohol, Tobacco and Firearms Bureau presented grand jury subpoenas issued in blank by the clerk of the District Court, and completed by the United States Attorney's office, to the presidents of the Citizens & Southern National Bank of Warner Robins and the Bank of Byron, where respondent maintained accounts. The subpoenas required the two presidents to appear on January 24, 1973, and to produce

> "all records of accounts, i. e., savings, checking, loan or otherwise, in the name of Mr. Mitch Miller [respondent], 3859 Mathis Street, Macon, Ga. and/or Mitch Miller Associates, 100 Executive

Terrace, Warner Robins, Ga., from October 1, 1972, through the present date [January 22, 1973, in the case of the Bank of Byron, and January 23, 1973, in the case of the Citizens & Southern National Bank of Warner Robins]."

The banks did not advise respondent that the subpoenas had been served but ordered their employees to make the records available and to provide copies of any documents the agents desired. At the Bank of Byron, an agent was shown microfilm records of the relevant account and provided with copies of one deposit slip and one or two checks. At the Citizens & Southern National Bank microfilm records also were shown to the agent, and he was given copies of the records of respondent's account during the applicable period. These included all checks, deposit slips, two financial statements, and three monthly statements. The bank presidents were then told that it would not be necessary to appear in person before the grand jury.

The grand jury met on February 12, 1973, 19 days after the return date on the subpoenas. Respondent and four others were indicted. The overt acts alleged to have been committed in furtherance of the conspiracy included three financial transactions—the rental by respondent of the van-type truck, the purchase by respondent of radio equipment, and the purchase by respondent of a quantity of sheet metal and metal pipe. The record does not indicate whether any of the bank records were in fact presented to the grand jury. They were used in the investigation and provided "one or two" investigatory leads. Copies of the checks also were introduced at trial to establish the overt acts described above.

In his motion to suppress, denied by the District Court, respondent contended that the bank documents were illegally seized. It was urged that the subpoenas were

defective because they were issued by the United States Attorney rather than a court, no return was made to a court, and the subpoenas were returnable on a date when the grand jury was not in session. The Court of Appeals reversed. 500 F. 2d 751 (1974). Citing the prohibition in *Boyd* v. *United States,* 116 U. S. 616, 622 (1886), against "compulsory production of a man's private papers to establish a criminal charge against him," the court held that the Government had improperly circumvented *Boyd*'s protections of respondent's Fourth Amendment right against "unreasonable searches and seizures" by "first requiring a third party bank to copy all of its depositors' personal checks and then, with an improper invocation of legal process, calling upon the bank to allow inspection and reproduction of those copies." 500 F. 2d, at 757. The court acknowledged that the recordkeeping requirements of the Bank Secrecy Act had been held to be constitutional on their face in *California Bankers Assn.* v. *Shultz,* 416 U. S. 21 (1974), but noted that access to the records was to be controlled by "existing legal process." See *id.,* at 52. The subpoenas issued here were found not to constitute adequate "legal process." The fact that the bank officers cooperated voluntarily was found to be irrelevant, for "he whose rights are threatened by the improper disclosure here was a bank depositor, not a bank official." 500 F. 2d, at 758.

The Government contends that the Court of Appeals erred in three respects: (i) in finding that respondent had the Fourth Amendment interest necessary to entitle him to challenge the validity of the subpoenas *duces tecum* through his motion to suppress; (ii) in holding that the subpoenas were defective; and (iii) in determining that suppression of the evidence obtained was the appropriate remedy if a constitutional violation did take place.

We find that there was no intrusion into any area in which respondent had a protected Fourth Amendment interest and that the District Court therefore correctly denied respondent's motion to suppress. Because we reverse the decision of the Court of Appeals on that ground alone, we do not reach the Government's latter two contentions.

## II

In *Hoffa* v. *United States,* 385 U. S. 293, 301–302 (1966), the Court said that "no interest legitimately protected by the Fourth Amendment" is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy, into "the security a man relies upon when he places himself or his property within a constitutionally protected area." The Court of Appeals, as noted above, assumed that respondent had the necessary Fourth Amendment interest, pointing to the language in *Boyd* v. *United States, supra,* at 622, which describes that Amendment's protection against the "compulsory production of a man's private papers." [1] We think that the Court of Appeals erred in finding the subpoenaed documents to fall within a protected zone of privacy.

On their face, the documents subpoenaed here are not respondent's "private papers." Unlike the claimant in *Boyd,* respondent can assert neither ownership nor possession. Instead, these are the business records of the banks. As we said in *California Bankers Assn.* v. *Shultz, supra,* at 48–49, "[b]anks are . . . not . . . neutrals in transactions involving negotiable instruments, but parties to the instruments with a substantial stake in their continued availability and acceptance." The records of re-

---

[1] The Fourth Amendment implications of *Boyd* as it applies to subpoenas *duces tecum* have been undercut by more recent cases. *Fisher* v. *United States, ante,* at 407–409. See *infra,* at 445–446.

spondent's accounts, like "all of the records [which are required to be kept pursuant to the Bank Secrecy Act,] pertain to transactions to which the bank was itself a party." *Id.*, at 52.

Respondent argues, however, that the Bank Secrecy Act introduces a factor that makes the subpoena in this case the functional equivalent of a search and seizure of the depositor's "private papers." We have held, in *California Bankers Assn.* v. *Shultz, supra*, at 54, that the mere maintenance of records pursuant to the requirements of the Act "invade[s] no Fourth Amendment right of any depositor." But respondent contends that the combination of the recordkeeping requirements of the Act and the issuance of a subpoena [2] to obtain those records permits the Government to circumvent the requirements of the Fourth Amendment by allowing it to obtain a depositor's private records without complying with the legal requirements that would be applicable had it proceeded against him directly. [3] Therefore, we must address the question whether the compulsion embodied in the Bank Secrecy Act as exercised in this case creates a Fourth Amendment interest in the depositor where none existed before. This question was expressly re-

---

[2] Respondent appears to contend that a depositor's Fourth Amendment interest comes into play only when a *defective* subpoena is used to obtain records kept pursuant to the Act. We see no reason why the existence of a Fourth Amendment interest turns on whether the subpoena is defective. Therefore, we do not limit our consideration to the situation in which there is an alleged defect in the subpoena served on the bank.

[3] It is not clear whether respondent refers to attempts to obtain private documents through a subpoena issued directly to the depositor or through a search pursuant to a warrant. The question whether personal business records may be seized pursuant to a valid warrant is before this Court in No. 74–1646, *Andresen* v. *Maryland*, cert. granted, 423 U. S. 822.

served in *California Bankers Assn., supra,* at 53–54, and n. 24.

Respondent urges that he has a Fourth Amendment interest in the records kept by the banks because they are merely copies of personal records that were made available to the banks for a limited purpose and in which he has a reasonable expectation of privacy. He relies on this Court's statement in *Katz* v. *United States,* 389 U. S. 347, 353 (1967), quoting *Warden* v. *Hayden,* 387 U. S. 294, 304 (1967), that "we have . . . departed from the narrow view" that " 'property interests control the right of the Government to search and seize,' " and that a "search and seizure" become unreasonable when the Government's activities violate "the privacy upon which [a person] justifiably relie[s]." But in *Katz* the Court also stressed that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." 389 U. S., at 351. We must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate "expectation of privacy" concerning their contents. Cf. *Couch* v. *United States,* 409 U. S. 322, 335 (1973).

Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate "expectation of privacy" in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business. The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records

to be maintained because they "have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings." 12 U. S. C. § 1829b (a)(1). Cf. *Couch* v. *United States, supra,* at 335.

The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. *United States* v. *White,* 401 U. S. 745, 751–752 (1971). This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed. *Id.,* at 752; *Hoffa* v. *United States,* 385 U. S., at 302; *Lopez* v. *United States,* 373 U. S. 427 (1963).[4]

This analysis is not changed by the mandate of the Bank Secrecy Act that records of depositors' transactions be maintained by banks. In *California Bankers Assn.* v. *Shultz,* 416 U. S., at 52–53, we rejected the contention that banks, when keeping records of their depositors' transactions pursuant to the Act, are acting solely as agents of the Government. But, even if the banks could be said to have been acting solely as Government agents in transcribing the necessary information and complying without protest [5] with the requirements of the subpoenas, there would be no intrusion upon the depositors' Fourth Amendment rights. See *Osborn* v. *United States,* 385 U. S. 323 (1966); *Lewis* v. *United States,* 385 U. S. 206 (1966).

---

[4] We do not address here the question of evidentiary privileges, such as that protecting communications between an attorney and his client. Cf. *Fisher* v. *United States, ante,* at 403–405.

[5] Nor did the banks notify respondent, a neglect without legal consequences here, however unattractive it may be.

## III

Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued. *California Bankers Assn.* v. *Shultz, supra,* at 53; *Donaldson* v. *United States,* 400 U. S. 517, 537 (1971) (Douglas, J., concurring). Under these principles, it was firmly settled, before the passage of the Bank Secrecy Act, that an Internal Revenue Service summons directed to a third-party bank does not violate the Fourth Amendment rights of a depositor under investigation. See *First National Bank of Mobile* v. *United States,* 267 U. S. 576 (1925), aff'g 295 F. 142 (SD Ala. 1924). See also *California Bankers Assn.* v. *Shultz, supra,* at 53; *Donaldson* v. *United States, supra,* at 522.

Many banks traditionally kept permanent records of their depositors' accounts, although not all banks did so and the practice was declining in recent years. By requiring that such records be kept by all banks, the Bank Secrecy Act is not a novel means designed to circumvent established Fourth Amendment rights. It is merely an attempt to facilitate the use of a proper and long-standing law enforcement technique by insuring that records are available when they are needed.[6]

---

[6] Respondent does not contend that the subpoenas infringed upon his First Amendment rights. There was no blanket reporting requirement of the sort we addressed in *Buckley* v. *Valeo,* 424 U. S. 1, 60–84 (1976), nor any allegation of an improper inquiry into protected associational activities of the sort presented in *Eastland* v. *United States Servicemen's Fund,* 421 U. S. 491 (1975).

We are not confronted with a situation in which the Government, through "unreviewed executive discretion," has made a wide-ranging

We hold that the District Court correctly denied respondent's motion to suppress, since he possessed no Fourth Amendment interest that could be vindicated by a challenge to the subpoenas.

## IV

Respondent contends not only that the subpoenas *duces tecum* directed against the banks infringed his Fourth Amendment rights, but that a subpoena issued to a bank to obtain records maintained pursuant to the Act is subject to more stringent Fourth Amendment requirements than is the ordinary subpoena. In making this assertion he relies on our statement in *California Bankers Assn., supra,* at 52, that access to the records maintained by banks under the Act is to be controlled by "existing legal process." [7]

In *Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186, 208 (1946), the Court said that "the Fourth [Amendment], if applicable [to subpoenas for the production of business records and papers], at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding

inquiry that unnecessarily "touch[es] upon intimate areas of an individual's personal affairs." *California Bankers Assn.* v. *Shultz,* 416 U. S., at 78–79 (POWELL, J., concurring). Here the Government has exercised its powers through narrowly directed subpoenas *duces tecum* subject to the legal restraints attendant to such process. See Part IV, *infra.*

[7] This case differs from *Burrows* v. *Superior Court,* 13 Cal. 3d 238, 529 P. 2d 590 (1974), relied on by MR. JUSTICE BRENNAN in dissent, in that the bank records of respondent's accounts were furnished in response to "compulsion by legal process" in the form of subpoenas *duces tecum.* The court in *Burrows* found it "significant . . . that the bank [in that case] provided the statements to the police in response to an informal oral request for information." *Id.,* at 243, 529 P. 2d, at 593.

agency is authorized by law to make and the materials specified are relevant." See also *United States* v. *Dionisio,* 410 U. S. 1, 11–12 (1973). Respondent, citing *United States* v. *United States District Court,* 407 U. S. 297 (1972), in which we discussed the application of the warrant requirements of the Fourth Amendment to domestic security surveillance through electronic eavesdropping, suggests that greater judicial scrutiny, equivalent to that required for a search warrant, is necessary when a subpoena is to be used to obtain bank records of a depositor's account. But in *California Bankers Assn.,* 416 U. S., at 52, we emphasized only that access to the records was to be in accordance with "existing legal process." There was no indication that a new rule was to be devised, or that the traditional distinction between a search warrant and a subpoena would not be recognized.[8]

In any event, for the reasons stated above, we hold that respondent lacks the requisite Fourth Amendment interest to challenge the validity of the subpoenas.[9]

## V

The judgment of the Court of Appeals is reversed. The court deferred decision on whether the trial court had improperly overruled respondent's motion to suppress

---

[8] A subpoena *duces tecum* issued to obtain records is subject to no more stringent Fourth Amendment requirements than is the ordinary subpoena. A search warrant, in contrast, is issuable only pursuant to prior judicial approval and authorizes Government officers to seize evidence without requiring enforcement through the courts. See *United States* v. *Dionisio,* 410 U. S. 1, 9–10 (1973).

[9] There is no occasion for us to address whether the subpoenas complied with the requirements outlined in *Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186 (1946). The banks upon which they were served did not contest their validity.

distillery apparatus and raw material seized from a rented truck. We remand for disposition of that issue.

*So ordered.*

MR. JUSTICE BRENNAN, dissenting.

The pertinent phrasing of the Fourth Amendment— "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"—is virtually *in haec verba* as Art. I, § 19, of the California Constitution— "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, shall not be violated." The California Supreme Court has reached a conclusion under Art. I, § 19, in the same factual situation, contrary to that reached by the Court today under the Fourth Amendment.[1] I dissent because in my view the California Supreme Court correctly interpreted the relevant constitutional language.

In *Burrows* v. *Superior Court,* 13 Cal. 3d 238, 529 P. 2d 590 (1974), the .question was whether bank statements or copies thereof relating to an accused's bank accounts obtained by the sheriff and prosecutor without

---

[1] The expectation of privacy relied upon by respondent to support his Fourth Amendment claim is similar to that rejected as to similar documents in *Couch* v. *United States,* 409 U. S. 322 (1973). But in *Couch* the taxpayer had delivered the documents to her accountant for preparation of income tax ,returns "knowing that mandatory disclosure of much of the information therein is required in an income tax return." *Id.,* at 335; see *id.,* at 337 (BRENNAN, J., concurring). In contrast, in the instant case the banks were obliged only to respond to lawful process, *California Bankers Assn.* v. *Shultz,* 416 U. S. 21, 52–54 (1974), and had no obligation to disclose the information voluntarily. The expectation of privacy asserted in *Fisher* v. *United States, ante,* p. 391, is distinguishable on similar grounds.

benefit of legal process,[2] but with the consent of the bank, were acquired as a result of an illegal search and seizure. The California Supreme Court held that the accused had a reasonable expectation of privacy in his bank statements and records, that the voluntary relinquishment of such records by the bank at the request of the sheriff and prosecutor did not constitute a valid consent by the accused, and that the acquisition by the officers of the records therefore was the result of an illegal search and seizure. In my view the same conclusion, for the reasons stated by the California Supreme Court, is compelled in this case under the practically identical phrasing of the Fourth Amendment. Addressing the threshold question whether the accused's right of privacy was invaded, and relying in part on the decision of the Court of Appeals in this case, Mr. Justice Mosk stated in his excellent opinion for a unanimous court:

> "It cannot be gainsaid that the customer of a bank expects that the documents, such as checks, which he transmits to the bank in the course of his business operations, will remain private, and that such an expectation is reasonable. The prosecution concedes as much, although it asserts that this expecta-

---

[2] The Court distinguishes *Burrows* on the ground that it involved no legal process, while the instant case involves legal process in the form of subpoenas *duces tecum*. *Ante,* at 445 n. 7. But the Court also states that the Fourth Amendment issue does not turn on whether the subpoenas were defective. *Ante,* at 441 n. 2.

In any event, for present purposes I would accept the Court of Appeals' conclusion that the subpoenas in this case were defective. Moreover, although not relied upon by the Court of Appeals, neither the bank nor the Government notified respondent of the disclosure of his records to the Government. In my view, the absence of such notice is not just "unattractive," *ante,* at 443 n. 5; a fatal constitutional defect inheres in a process that omits provision for notice to the bank customer of an invasion of his protected Fourth Amendment interest.

tion is not constitutionally cognizable. Representatives of several banks testified at the suppression hearing that information in their possession regarding a customer's account is deemed by them to be confidential.

"In the present case, although the record establishes that copies of petitioner's bank statements rather than of his checks were provided to the officer, the distinction is not significant with relation to petitioner's expectation of privacy. That the bank alters the form in which it records the information transmitted to it by the depositor to show the receipt and disbursement of money on a bank statement does not diminish the depositor's anticipation of privacy in the matters which he confides to the bank. A bank customer's reasonable expectation is that, absent compulsion by legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes. Thus, we hold petitioner had a reasonable expectation that the bank would maintain the confidentiality of those papers which originated with him in check form and of the bank statements into which a record of those same checks had been transformed pursuant to internal bank practice.

.        .        .        .        .

"The People assert that no illegal search and seizure occurred here because the bank voluntarily provided the statements to the police, and the bank rather than the police conducted the search of its records for papers relating to petitioner's accounts. If, as we conclude above, petitioner has a reasonable expectation of privacy in the bank statements, the voluntary relinquishment of such records by the bank at the request of the police does not constitute

a valid consent by this petitioner. . . . It is not the right of privacy of the bank but of the petitioner which is at issue, and thus it would be untenable to conclude that the bank, a neutral entity with no significant interest in the matter, may validly consent to an invasion of its depositors' rights. However, if the bank is not neutral, as for example where it is itself a victim of the defendant's suspected wrongdoing, the depositor's right of privacy will not prevail.

"Our rationale is consistent with the recent decision of *United States* v. *Miller* (5th Cir. 1974) 500 F. 2d 751. In *Miller*, the United States Attorney, without the defendant's knowledge, issued subpoenas to two banks in which the defendant maintained accounts, ordering the production of 'all records of accounts' in the name of the defendant. The banks voluntarily provided the government with copies of the defendant's checks and a deposit slip; these items were introduced into evidence at the trial which led to his conviction. The circuit court reversed the conviction. It held that the defendant's rights under the Fourth Amendment were violated by the search because the subpoena was issued by the United States Attorney rather than by a court or grand jury, and the bank's voluntary compliance with the subpoena was irrelevant since it was the depositor's right to privacy which was threatened by the disclosure.

"We hold that any bank statements or copies thereof obtained by the sheriff and prosecutor without the benefit of legal process were acquired as the result of an illegal search and seizure (Cal. Const., art. I, § 13), and that the trial court should have granted the motion to suppress such documents.

.     .     .     .     .

"The underlying dilemma in this and related cases is that the bank, a detached and disinterested entity, relinquished the records voluntarily. But that circumstance should not be crucial. For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography. While we are concerned in the present case only with bank statements, the logical extension of the contention that the bank's ownership of records permits free access to them by any police officer extends far beyond such statements to checks, savings, bonds, loan applications, loan guarantees, and all papers which the customer has supplied to the bank to facilitate the conduct of his financial affairs upon the reasonable assumption that the information would remain confidential. To permit a police officer access to these records merely upon his request, without any judicial control as to relevancy or other traditional requirements of legal process, and to allow the evidence to be used in any subsequent criminal prosecution against a defendant, opens the door to a vast and unlimited range of very real abuses of police power.

"Cases are legion that condemn violent searches and invasions of an individual's right to the privacy of his dwelling. The imposition upon privacy, although perhaps not so dramatic, may be equally devastating when other methods are employed. Development of photocopying machines, electronic computers and other sophisticated instruments have

accelerated the ability of government to intrude into areas which a person normally chooses to exclude from prying eyes and inquisitive minds. Consequently judicial interpretations of the reach of the constitutional protection of individual privacy must keep pace with the perils created by these new devices." 13 Cal. 3d, at 243–248, 529 P. 2d, at 593–596 (footnote omitted).

The California Supreme Court also addressed the question of the relevance of *California Bankers Assn.* v. *Shultz,* 416 U. S. 21 (1974). In my view, for the reasons stated in *Burrows,* the decision of the Court of Appeals under review today, is in no way inconsistent with *California Bankers.*[3] The California Supreme Court said:

"[*California Bankers*] held, in a six-three decision, that the bank's rights under the Fourth Amendment were not abridged by the regulation, and that the depositor plaintiffs lacked standing to challenge the reporting requirement because there was no showing that they engaged in the type of transaction to which the regulation referred.

"The concurring views of two justices who provided the necessary votes to create a majority are of particular interest. Justice Powell's opinion, joined by Justice Blackmun [416 U. S., at 78] makes clear that a significant extension of the reporting requirement would pose substantial constitutional questions, and that concurrence with the

---

[3] I continue to believe that the reporting and recordkeeping requirements of the Bank Secrecy Act are unconstitutional. *California Bankers Assn.* v. *Shultz,* 416 U. S., at 91 (BRENNAN, J., dissenting). But I disagree with the Court's reasoning in this case even assuming the constitutionality of the Act, and therefore it is unnecessary for me to rely on the infirmities inherent in the Act.

majority was based upon the provisions of the act as narrowed by the regulations. He wrote, 'In their full reach, the reports apparently authorized by the open-ended language of the Act touch upon intimate areas of an individual's personal affairs. Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy. Moreover, the potential for abuse is particularly acute where, as here, the legislative scheme permits access to this information without invocation of the judicial process. In such instances, the important responsibility for balancing societal and individual interests is left to unreviewed executive discretion, rather than the scrutiny of a neutral magistrate. *United States* v. *United States District Court,* 407 U. S. 297, 316–317.' [416 U. S., at 78–79.]

"Justices Douglas and Marshall dissented on the ground that the act violated the Fourth Amendment. Justice Brennan also filed a dissent, stating that the recordkeeping and reporting requirements of the act constituted an impermissibly broad grant of power to the Secretary.

". . . [T]he only federal case decided after *Shultz* and directly confronting the issue of the depositor's rights is entirely consistent with the views we have set forth above. . . . *Miller* holds that *Shultz* may not be interpreted as 'proclaiming open season on personal bank records' or as permitting the government to circumvent the Fourth Amendment by first requiring banks to copy their depositors' checks and then calling upon the banks to allow inspection of those copies without appropriate legal process." 13 Cal. 3d, at 246–247, 529 P. 2d, at 595–596 (footnote omitted).

454

I would therefore affirm the judgment of the Court of Appeals. I add only that *Burrows* strikingly illustrates the emerging trend among high state courts of relying upon state constitutional protections of individual liberties [4]—protections pervading counterpart provisions of

[4] See, *e. g.*, cases cited in *Baxter* v. *Palmigiano, ante,* at 339, and n. 10 (BRENNAN, J., dissenting); *Michigan* v. *Mosley,* 423 U. S. 96, 120–121 (1975) (BRENNAN, J., dissenting). See also Wilkes, The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court, 62 Ky. L. J. 421 (1974); Wilkes, More on the New Federalism in Criminal Procedure, 63 Ky. L. J. 873 (1975); Falk, The State Constitution: A More Than "Adequate" Nonfederal Ground, 61 Calif. L. Rev. 273 (1973); Project Report: Toward an Activist Role for State Bills of Rights, 8 Harv. Civ. Rights-Civ. Lib. L. Rev. 271 (1973). In the past, it might have been safe for counsel to raise only federal constitutional issues in state courts, but the risks of not raising state-law questions are increasingly substantial, as revealed by a colloquy during argument in *Michigan* v. *Mosley, supra:*

"QUESTION: Why can't you argue all of this as being contrary to the law and the Constitution of the State of Michigan?

"MR. ZIEMBA: I can because we have the same provision in the Michigan Constitution of 1963 as we have in the Fifth Amendment of the Federal Constitution, certainly.

.       .       .       .

"QUESTION: Well, you argued the whole thing before.

"MR. ZIEMBA: In the Court of Appeals?

"QUESTION: Yes.

"MR. ZIEMBA: I really did not touch upon—I predicated my entire argument on the Federal Constitution, I must admit that. I did not mention the equivalent provision of the Michigan Constitution of 1963, although I could have. And I may assure this Court that at every opportunity in the future, I shall.

"[Laughter.]

"QUESTION: But you hope you don't have that opportunity in this case.

"MR. ZIEMBA: That's right." Tr. of Oral Arg. 43–44 (O. T. 1975, No. 74–653).

It would be unwise for counsel to rely on state courts to consider state-law questions *sua sponte.* But see *State* v. *Johnson,* 68 N. J. 349, 346 A. 2d 66 (1975).

the United States Constitution, but increasingly being ignored by decisions of this Court. For the most recent examples in this Court, but only in the privacy and Fourth Amendment areas, see, *e. g.*, *Kelley* v. *Johnson*, *ante*, p. 238; *Doe* v. *Commonwealth's Atty.*, *post*, p. 901; *Paul* v. *Davis*, 424 U. S. 693 (1976); *United States* v. *Watson*, 423 U. S. 411 (1976).

MR. JUSTICE MARSHALL, dissenting.

In *California Bankers Assn.* v. *Shultz*, 416 U. S. 21 (1974), the Court upheld the constitutionality of the recordkeeping requirements of the Bank Secrecy Act. 12 U. S. C. § 1829b (d). I dissented, finding the required maintenance of bank customers' records to be a seizure within the meaning of the Fourth Amendment and unlawful in the absence of a warrant and probable cause. While the Court in *California Bankers Assn.* did not then purport to decide whether a customer could later challenge the bank's delivery of his records to the Government pursuant to subpoena, I warned:

> "[I]t is ironic that although the majority deems the bank customers' Fourth Amendment claims premature, it also intimates that once the bank has made copies of a customer's checks, the customer no longer has standing to invoke his Fourth Amendment rights when a demand is made on the bank by the Government for the records. . . . By accepting the Government's bifurcated approach to the recordkeeping requirement and the acquisition of the records, the majority engages in a hollow charade whereby Fourth Amendment claims are to be labeled premature until such time as they can be deemed too late." 416 U. S., at 97.

Today, not surprisingly, the Court finds respondent's claims to be made too late. Since the Court in *Califor-*

*nia Bankers Assn.* held that a bank, in complying with the requirement that it keep copies of the checks written by its customers, "neither searches nor seizes records in which the depositor has a Fourth Amendment right," *id.,* at 54, there is nothing new in today's holding that respondent has no protected Fourth Amendment interest in such records. *A fortiori,* he does not have standing to contest the Government's subpoena to the bank. *Alderman* v. *United States,* 394 U. S. 165 (1969).

I wash my hands of today's extended redundancy by the Court. Because the recordkeeping requirements of the Act order the seizure of customers' bank records without a warrant and probable cause, I believe the Act is unconstitutional and that respondent has standing to raise that claim. Since the Act is unconstitutional, the Government cannot rely on records kept pursuant to it in prosecuting bank customers. The Government relied on such records in this case and, because of that, I would affirm the Court of Appeals' reversal of respondent's conviction. I respectfully dissent.