Deyton v. Estate of Waters, 2011 NCBC 34.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF NEW HANOVER | 10 CVS 2582 |

ROBERT G. DEYTON, JR., M.D., and
YVONNE S. DEYTON,

        Plaintiffs,

    v.

ESTATE OF KENNETH C. WATERS,
JR., Jerry A. Mannen, Jr., Public
Administrator, and MULTI-
FINANCIAL SECURITIES
CORPORATION, individually and as
successor-in-interest to IFG Network
Securities, Inc.,

        Defendants,

    v.

RICK E. GRAVES, JR., Trustee,

        Additional Defendant
        on Crossclaim.

**ORDER**

{1} THIS MATTER is before the Court on Kara Waters' ("Movant") Motion to Intervene for the Limited Purpose of Seeking Modification of Subpoena ("Motion to Intervene") regarding a subpoena *duces tecum* issued on August 23, 2010 ("Bank Subpoena") by Multi-Financial Securities Corporation ("MFSC") to non-party East Carolina Bank ("ECB"), as well as MFSC's Motion to Compel Production by the East Carolina Bank and Request for Expedited Procedure ("Motion to Compel ECB"). By agreement, the matters were brought in a consolidated matter pursuant to Rule 15 of this Court dealing with discovery matters. Both motions depend of whether Movant has standing to object to the Bank Subpoena, whether or not she

becomes a party to the action. Movant has also filed a Written Objection to Subpoena Pursuant to Rule 45(c)(3) ("Objection") in regard to a similar subpoena issued to her on the same date ("Waters Subpoena"). The Court determines that because Movant lacks standing to challenge a subpoena issued to a third party, her Motion to Intervene for that purpose is DENIED and MFSC's Motion to Compel with regard to the Bank Subpoena is GRANTED. However, the Court sustains Movant's objection to the Waters Subpoena at this time, subject to the subpoena potentially being reissued following ECB's production pursuant to the Bank Subpoena, at which time the parties may further address the potential relevance of additional documents sought by the Waters Subpoena.

*Ward and Smith, P.A., by Jenna Fruechtenicht Butler for non-party Kara D. Waters.*

*Williams Mullen, by Daniel Lee Brawley and Edward James Coyne III for Defendant Multi-Financial Securities Corporation.*

Gale, Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

{2} The Court understands the following facts are undisputed, and the Court recites only those facts necessary to resolve the pending motions.

{3} Plaintiffs, Robert G. Deyton and Yvonne S. Deyton, are citizens and residents of Pitt County, North Carolina, who were clients of Kenneth C. Waters, Jr. ("Ken Waters"), IFG Network Securities, Inc. ("IFG"), and/or IFG's successor in interest, MFSC until the death of Ken Waters on July 17, 2009. (Compl. ¶¶ 1, 7, 20, 21.)

{4} Defendant Estate of Kenneth C. Waters, Jr. ("Estate") was properly opened in New Hanover County on or about July 29, 2009. (Compl. ¶ 3.)

{5} Defendant MFSC is a Colorado corporation doing business in North Carolina. (Compl. ¶ 4.)

{6} Non-party Kara D. Waters ("Movant") is the widow of Ken Waters, and daughter of the Plaintiffs. None of the pleadings contain any allegation of wrongdoing on her part. (Compl. ¶¶ 16, 17.)

{7} Plaintiffs allege, *inter alia*, that they were the victims of fraud perpetrated over the course of several years by Ken Waters. (Compl. ¶ 24.)

{8} Plaintiffs filed their Verified Complaint on June 1, 2010 in New Hanover County Superior Court, naming as defendants not only the Estate, but also MFSC, individually and as successor-in-interest to IFG.

{9} Plaintiffs' action was designated a mandatory complex business case pursuant to N.C. Gen. Stat. § 7A-45.4(b) on July 2, 2010 by order of the Chief Justice of the Supreme Court of North Carolina. The case was then assigned to this Court.

{10} Defendant MFSC denies liability and has asserted crossclaims against the Estate for contribution and indemnification, and further claims that Ken Waters fraudulently transferred assets that, if recaptured, would be available to satisfy a judgment.

{11} On August 23, 2010, counsel for MFSC issued the Waters Subpoena, which is a subpoena *duces tecum* to Movant requesting production of a variety of Movant's financial records. (Mot. to Compel Produc. by Kara Deyton Waters and Request for Expedited Procedure Ex. A.)

{12} On September 1, 2010, Movant filed her Objection, attacking the Waters Subpoena as "unreasonable, oppressive, and subject[ing] [Movant] to undue burden and expense." (Objection ¶ 1.)

{13} On August 23, 2010, MFSC issued the Bank Subpoena, a subpoena *duces tecum* to ECB, seeking records of accounts maintained by Ken Waters, as well as Movant and her children. (Mot. to Compel ECB Ex. A.)

{14} Among the records requested in the Bank Subpoena are those evidencing:

(1) All checking, savings, money market and other accounts in the name or for the benefit of Kara D. Waters including but not limited to account number [redacted].

(2) All checking, savings, money market and other accounts in the name or for the benefit of Kara D. Waters, Custodian FBO Anneliese Waters.

(3) All checking, savings, money market and other accounts in the name or for the benefit of Kara D. Waters, Custodian FBO Cameron Waters.

(4) All checking, savings, money market and other accounts in the name or for the benefit of Anneliese Waters.

(5) All checking, savings, money market and other accounts in the name or for the benefit of Cameron S. Waters.[1]

(6) All checking, savings, money market and other accounts for which Kenneth C. Waters, Jr. and/or Kara D. Waters had and/or exercised signatory authority. (Mot. to Compel ECB Ex. A.)

{15} On September 2, 2010, counsel for Movant wrote ECB and advised it not to produce the documents described above. (Mot. to Compel ECB ¶ 18.)

{16} Following receipt of a copy of this letter from Movant's counsel, MFSC contacted ECB and agreed to extend the time to produce the documents encompassed by the Bank Subpoena while counsel for MFSC and Movant attempted to resolve the issues raised in Movant's Objection. (Mot. to Compel ECB ¶ 28.)

{17} ECB did not formally object to the Bank Subpoena.

{18} On May 11, 2011, Movant filed her Motion to Intervene.

{19} In her Motion to Intervene, Movant claims that the Bank Subpoena — at least insofar as it requests her bank records dated after her husband's death — is "unreasonable, oppressive, overreaching, and procedurally defective in that it requests personal banking documents of [Movant] that have no relevance and no connection to the claims and crossclaims in this matter." (Mot. to Intervene ¶ 15.)

---

[1] Anneliese and Cameron Waters are Movant's children.

{20} In response, on July 13, 2011, MFSC filed a Motion to Compel Production by the East Carolina Bank and Request for Expedited Procedure on July 13, 2011.  Movant timely responded.

{21}  At the conclusion of a telephone hearing on July 21, 2011, the Court allowed Movant and MFSC to submit supplemental briefs on the issue of whether Movant has standing to challenge the Bank Subpoena.

{22} The Parties agreed to utilize the discovery motion provided by Business Court Rule 15.12.  (Mot. to Compel ECB ¶ 32.)

{23} The issue has been fully briefed, and the Court heard oral arguments on September 16, 2011. The matter is now ripe for disposition.

## II. ANALYSIS

{24} Movant seeks to intervene in this suit for the sole purpose of modifying the Bank Subpoena.  However, even if the Court were to allow Movant to intervene as a party for this limited purpose, the question remains whether Movant has standing to object to a subpoena issued to a third party.

{25} The North Carolina Rules of Civil Procedure provide that "a person commanded to appear at a deposition or to produce and permit the inspection and copying of records may . . . serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection."  N.C. R. Civ. P. 45(c)(3).

{26} In addition, the Rules state that "[a] person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, or other tangible things . . . may file a motion to quash or modify the subpoena."  N.C. R. Civ. P. 45(c)(5).

{27} Movant clearly has standing to object to the Waters Subpoena, and has in fact filed a written objection pursuant to Rule 45(c)(3) in regard to that subpoena.

{28} The Bank Subpoena, however, does not command Movant to appear at a trial, hearing, or deposition; nor does it require her to produce any records.  The

Bank Subpoena commands ECB to produce and permit inspection and copying of its own internal records.

{29} As a general proposition, parties to a lawsuit typically lack standing to challenge a subpoena issued to a third party. *Jarrell v. Charlotte-Mecklenburg Hospital Authority*, __ N.C. App. __, 698 S.E.2d 190, 194 (2010). "The exception to this general rule can arise in the context of a subpoena *duces tecum* if a party has privilege over information requested[.]" *Id.* (emphasis in original); *see also Chazin v. Lieberman*, 129 F.R.D. 97 (S.D.N.Y. 1990) (acknowledging the existence of a similar exception in federal proceedings).

{30} Movant contends that she has standing to challenge the Bank Subpoena "because her personal privacy interests are at stake." (Kara Waters' Br. on Issue of Standing to Challenge Third-Party Subpoenas ("Waters Standing Br.") 4.) In essence, Movant asserts her bank records are privileged, and as a result she possesses standing to challenge the Bank Subpoena. Significantly, there is a difference between documents being privileged and their being kept confidential. In this case, the Parties have agreed to a protective order which affords Movant the right to designate documents confidential and restrict their usage, whether or not Movant is a party to the action.

{31} In support of her contention, Movant first directs the Court's attention to the Federal Right to Financial Privacy Act of 1978 ("Federal Privacy Act"). *See* Pub L. No. 95-630; 92 Stat. 3697 (1978). Movant argues the intent of that legislation "was to give individuals the standing to complain of improper release of information about them in records maintained by financial institutions." (Waters Standing Br. 6.)

{32} However, as Movant acknowledges in her brief, the Federal Privacy Act was passed largely in response to the Supreme Court's decision in *U.S. v. Miller*, 425 U.S. 435 (1976), which held that bank customers do not have a reasonable expectation of privacy in their bank records sufficient to warrant protection under the 4th Amendment of the United States Constitution.

{33} Accordingly, the Federal Privacy Act operates to limit the circumstances under which the federal government may obtain financial records of bank customers. Specifically, the Act prohibits the disclosure of customer information by banks to government authorities except in five enumerated situations. *See* 12 U.S.C. § 3402 (listing those exceptions).

{34} Thus, it has been said that the passage of the Federal Privacy Act overruled *Miller*, at least in part. *See Keybank N.A. v. Perkins Rowe Associates, LLC*, 2010 WL 4696637, at \*2 n.6 (M.D. La. Nov. 12, 2010) ("*Miller* was abrogated in part in 1978 by the Right to Financial Privacy Act . . . which limits a government authority's ability to acquire personal financial information from banks and similar financial institutions").

{35} However, "[t]he Act did not provide similar limitations and protections when records are sought in the context of a civil action." *Id.*; *See also Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) ("*Miller* was a criminal case and the Financial Privacy Act was a legislative . . . effort to establish nonconstitutional protection against possible abuses [in the criminal investigative process]. The Act created standing for the customer of a financial institution to contest Government access to financial records. Nothing in the Act, however, shields the records of a bank customer's transactions from discovery in a civil suit.") (internal quotations and citations omitted) (brackets in original).

{36} MFSC is not a government agency, nor is this suit a criminal matter. Therefore, the Federal Privacy Act does not in and of itself confer upon Movant any privilege in her bank records sufficient to challenge the Bank Subpoena.[2]

{37} Movant next invokes the North Carolina Financial Privacy Act ("NCFPA"), N.C. Gen. Stat. §§ 53B-1, *et seq*, as supporting her position that bank

---

[2] As Judge Dever noted in his opinion in *United States v. Gordon*, 247 F.R.D. 509, 510 (E.D.N.C. 2007), "[a] small number of courts have held that a party's claimed privilege with respect to his or her bank account records is sufficient to confer standing for purposes of challenging a subpoena." However, the Court notes that this, and all of the federal cases discussed in Movant's brief, are potentially instructive as to the mechanics of federal civil procedure — not the North Carolina Rules of Civil Procedure which govern this case.

records are "privileged" in the sense that they endow a party not subject to a subpoena standing to object.

{38} Similar to the Federal Privacy Act, the NCFPA prohibits the disclosure of financial records to government authorities absent certain enumerated exceptions. *See* N.C. Gen. Stat. § 53B-4.

{39} The North Carolina Court of Appeals has expressly rejected the notion that the NCFPA applies in the civil context. *See Velez v. Dick Keffer Pontiac GMC Truck, Inc.*, 144 N.C. App. 589, 593 (2001) (refusing to apply the NCFPA to civil actions, noting that doing so "would severely limit the application of available discovery methods").

{40} Movant's brief is a thorough presentation and includes cogent policy arguments; however, Movant is unable to provide the Court with any North Carolina authority suggesting that the NCFPA, or any other statute, establishes in bank records the sort of a privilege contemplated by the exception discussed in *Jarrell*. Rather, Movant argues the relevancy requirements of N.C. Rule 26 are undercut by the inability of individuals to challenge third-party subpoenas as overly broad or being misused to seek irrelevant information. Movant insists that extending "[s]tanding in this instance is imperative to maintain[ing] the integrity of the legal system" and "furthers the policy behind the Rules of Civil Procedure." (Waters Standing Br. 15.)[3] Movant also stresses the NCFPA's proclamation that "[i]t is the policy of this State that financial records should be treated as confidential." N.C. Gen. Stat. § 53B-3.

{41} The Court recognizes that maintaining the confidentiality of bank records is an important public policy consideration. However, endowing individuals blanket standing to challenge any subpoena which may encompass their bank records would have far-reaching and possibly undesirable consequences. Perhaps

---

[3] The Court notes that ECB could have — perhaps at the behest of Movant — formally objected to the Bank Subpoena pursuant to Rule 45(c)(3), at which point the Court might be required to deal with these issues of breadth and relevancy, just as ultimately the Court may have to deal with those issues in regard to the Waters Subpoena. But the immediate question is whether the Court should allow a stranger to the subpoena to raise these issues. Granting such standing also has long-range policy implications and potential impact on judicial efficiencies.

most evident, the designation of bank records as "privileged" would likely impose a host of burdensome duties on financial institutions seeking to comply with otherwise valid subpoenas, as would require line drawing as to how far the privilege may extend to persons or entities whose business or affairs are touched upon by the subpoenaed bank records.

{42} The Court is not persuaded that the NCFPA's language declaring that "[i]t is the policy of this State that financial records should be treated as confidential" necessarily means parties may claim privilege in their bank records sufficient to endow those parties with standing to challenge third party subpoenas.

{43} Further, the Court notes that the expression of public policy is more generally a matter for the legislature. Had the Legislature intended for litigants to have broad standing to challenge subpoenas issued to third parties, they could have manifested that intent in the plain text of the Rules of Civil Procedure, just it could have expressly granted standing with regard to bank records in the NCFPA.

{44} In sum, Movant reasons that "a party issuing a subpoena should not be allowed to flout [the relevancy requirements of N.C.R. Civ. P. 26] merely because the person whose interests are at stake is not the party from whom the information has been requested." (Waters Standing Br. 4.)

{45} However, nothing in the North Carolina Rules of Civil Procedure, the Federal Privacy Act, or the North Carolina Financial Privacy Act expressly grants a privilege in bank records sufficient for a third-party to invoke the exception discussed in *Jarrell*. The burden that would be imposed in administering or interpreting an implied privilege in such records raises countervailing policy concerns. In light of existing precedent, any such major change in law is the business of the Legislature, not this Court.

## III. CONCLUSIONS OF LAW

{46} Based on the foregoing, the Court concludes:

1. ECB was the sole entity which may object to the relevancy of the Bank Subpoena, but did not object;

2. Movant lacks standing to challenge the Bank Subpoena;

3. Movant does possess standing to challenge the relevancy of the Waters Subpoena and need not be a party to do so;

4. The Court determines that any ultimate ruling on Movant's Objection to the Waters Subpoena is more prudently left until after the parties have had an opportunity to examine the documents encompassed by the Bank Subpoena, at which point the Court will be better positioned to assess the merits of that Objection;

5. Accordingly, Movant need not comply with the Waters Subpoena until further order; and

6. ECB should comply with the Bank Subpoena.

IT IS THEREFORE ORDERED that Movant's Motion to Intervene for the Limited Purpose of Seeking Modification of the Bank Subpoena is DENIED, and MFSC's Motion to Compel Production by ECB is GRANTED. The Waters Subpoena shall be held in abeyance, without prejudice, pending production of the documents encompassed by the Bank Subpoena and further proceedings.

This, the 23rd day of September, 2011.