

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-12-00317-CR

Jon Thomas **FORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR7741
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting Opinion by:  Luz Elena D. Chapa, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 20, 2014

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001); *see Katz v. United States*, 389 U.S. 347, 360–62 (1967) (Harlan, J., concurring). Ford's cell phone provider tracked, collected, and recorded information about Ford's physical movements and location whenever he received or placed a call or text message. This "historical cell site data" was based on the cell phone towers through which his calls and texts were routed. Because I would hold that Ford retained an objectively reasonable expectation of privacy in his physical movements and location, I respectfully dissent from the court's judgment affirming Ford's conviction.

The amount of detailed information that a cell phone provider has the means to track, collect, and record about its customers as they conduct their everyday lives is staggering. *See United States v. Jones*, 132 S.Ct. 945, 963 (2012) (Alito, J., concurring in judgment). For instance, "[h]istoric location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." *Riley v. California*, 134 S.Ct. 2473, 2490 (2014). Although less precise than GPS records, the historic cell site data compiled by cell phone providers can generate a "comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *See Jones*, 132 S.Ct. at 955 (Sotomayor, J., concurring); *see also id.* at 963 (Alito, J., concurring in judgment).

The majority holds that the third-party doctrine precludes Ford from having a reasonable expectation of privacy in this "historical cell site data" because he "voluntarily disclosed" it to his cell phone provider in the course of using his cell phone. To achieve this result, the majority relies on *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976).[1] These cases predate the advent of the earliest commercially available handheld cell phones.[2]

But the Supreme Court has recently recognized that modern cell phones—now a "pervasive and insistent" part of modern life—present privacy concerns far beyond the founding principles of the Fourth Amendment and the circumstances of the founding era. *See Riley*, 134 S.Ct. at 2484. In *Riley*, the Court held that the search-incident-to-an-arrest doctrine did not allow arresting officers to search the digital contents of cell phones seized in connection with an arrest. *Id.* at 2493–94.

---

[1] Although the majority primarily cites to opinions from the Fifth Circuit and the Fourteenth Court of Appeals, the underpinnings of its reasoning flow directly from the also-cited *Smith* and *Miller*.

[2] The first commercial cell phone system was introduced in 1983. *Mobile Telephone*, ENCYCLOPEDIA BRITANNICA ONLINE, http://www.britannica.com/EBchecked/topic/1482373/mobile-telephone/279851/Development-of-cellular-systems (last updated Sept. 5, 2013).

The Court recognized that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" and that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." *Id.* at 2488–89. Thus, the Court eschewed a "mechanical application" of its prior precedent that might well have supported a warrantless search of the appellant's cell phone. *Id.* at 2484. Similar to the way that the search-incident-to-arrest doctrine was ill suited to the digital data contained on cell phones seized during an arrest, the third-party doctrine is "ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." *Jones*, 132 S.Ct. at 957 (Sotomayor, J., concurring).

The majority's application of the third-party doctrine sweeps intimate details of a person's life outside the scope of the Fourth Amendment's protections because cell phone customers "voluntarily disclose" their location information simply by owning and using their cell phones. The majority thus confronts cell phone customers with a choice between Scylla and Charybdis: either forego the use of technology that has become a pervasive and insistent part of modern, everyday life or forego the protections of the Fourth Amendment. I cannot join such a sweeping and mechanical application of *Smith* and *Miller*.

Instead, I agree with the Third and Eleventh Circuits and conclude that "a cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'ns Serv. to Disclose Records to Gov't*, 620 F.3d 304, 317 (3rd Cir. 2010); *United States v. Davis*, 754 F.3d 1205, 1216–17 (11th Cir. 2014). I would therefore hold that Ford did not voluntarily surrender his reasonable expectation of privacy in his physical location and movements simply by using his

cell phone. Because the State did not secure a warrant before obtaining the historical cell site data from Ford's cell phone provider, Ford's Fourth Amendment rights were violated, and the trial court should have granted his motion to suppress.

Because the Fourth Amendment required suppression of the historical cell site data, the denial of Ford's motion to suppress was constitutional error. When an appellate court determines there was constitutional error at trial, it must "reverse a judgment of conviction . . . unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction . . . . TEX. R. APP. P. 44.2(a). The evidence against Ford was largely circumstantial, and I am unable to conclude beyond a reasonable doubt the erroneous admission of the historical cell site data did not contribute to Ford's conviction. I would therefore reverse Ford's conviction and remand this case to the trial court for further proceedings. Because the majority does not do so, I dissent.

Luz Elena D. Chapa, Justice

Publish