CANADY, J.,
dissenting.
Because I conclude that the cell site location information obtained by the police for Mr. Tracey’s cell phone is subject to the third-party-disclosure doctrine under Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), I would approve the Fourth District Court of Appeal’s decision to reject Tracey’s Fourth Amendment argument and to uphold the denial of his motion to suppress. Accordingly, I dissent.
In Smith, the Supreme Court concluded that the installation and use without a search warrant of a pen register — a device that makes a record of numbers dialed on a telephone — did not violate the Fourth Amendment. Id. at 745^46, 99 S.Ct. 2577. The Court reached this conclusion based on its determination' — under an analysis derived from Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) — that Smith had neither a subjec *527 tive expectation of privacy nor an objectively reasonable expectation of privacy regarding the numbers he dialed. Smith, 442 U.S. at 742-43, 99 S.Ct. 2577.
As to the subjective expectation of privacy, the Supreme Court observed that it doubted “that people in general entertain any actual expectation of privacy in the numbers they dial.” Id. at 742, 99 S.Ct. 2577. The Court reasoned that “[a]ll telephone users realize that they must ‘convey’ phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed” and that they also realize “that the phone company has facilities for making permanent records of the numbers they dial.” Id. In short, the Supreme Court concluded that “it is too much to believe that telephone subscribers ... harbor any general expectation that the numbers they dial will remain secret.” Id. at 743, 99 S.Ct. 2577. In connection with this point, the Court observed that “[t]he fact that [Smith] dialed the number on his home phone rather than on some other phone could make no conceivable difference, nor could any subscriber rationally think that it would.” Id.
As to the existence of an objectively reasonable expectation of privacy, the Supreme Court stated that “even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not ‘one that society is prepared to recognize as “reasonable.” ’ ” Id. The Court rested its conclusion on what is known as the third-party-disclosure doctrine. Id. at 743, 99 S.Ct. 2577. The Court pointed out that it “consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.” Id. at 743-44, 99 S.Ct. 2577. In particular, the Court discussed its decision in United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), which held that bank depositors have no legitimate expectation of privacy regarding financial information provided to a bank. See Smith, 442 U.S. at 744, 99 S.Ct. 2577. The Court observed that “[b]ecause the depositor ‘assumed the risk’ of disclosure” in providing information to the bank, “the [Miller] Court held that it would be unreasonable for him to expect his financial records to remain private.” Id.
The Court, therefore, determined that the third-party-disclosure doctrine negated any legitimate expectation of privacy regarding the numbers dialed on a telephone:
When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and “exposed” that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed. The switching equipment that processed those numbers is merely the modern counterpart of the operator who, in an earlier day, personally completed calls for the subscriber.

Id.

Application of the Katz analysis regarding expectations of privacy leads to a conclusion with respect to the cell site location information at issue here that is no different from the conclusion reached in Smith regarding the pen register data. As the United States Court of Appeals for the Fifth Circuit has explained:
A cell service subscriber, like a telephone user, understands that his cell phone must send a signal to a nearby cell tower in order to wirelessly connect his call. Cell phone users recognize that, if their phone cannot pick up a signal (or “has no bars”), they are out of the range of their service provider’s network of towers.... Cell phone users ... *528 understand that their service providers record their location information when they use their phones at least to the same extent that the landline users in Smith understood that the phone company recorded the numbers they dialed.
... Because a cell phone user makes a choice to get a phone, to select a particular service provider, and to make a call, and because he knows that the call conveys cell site information, ... he voluntarily conveys his cell site data each time he makes a call.
In re Application of the United States for Historical Cell Site Data, 724 F.3d 600, 613-14 (5th Cir.2013) (internal citations omitted); see also United States v. Graham, 846 F.Supp.2d 384, 400 (D.Md.2012) (“Like the bank- records at issue in Miller, [and] the telephone numbers dialed in Smith, ... historical cell site location records are records created and kept by third parties that are voluntarily conveyed to those third parties by their customers.”); United States v. Madison, 2012 WL 3095357, at *9 (S.D.Fla. July 30, 2012) (“Just as the Smith petitioner’s actions of making telephone calls provided information to the petitioner’s telephone company, Defendant knowingly and voluntarily gave information to his communications-service provider that he was located within the range of specific cell towers at the times that he made and received calls on his cell phone.”)
Given the known realities of how cell phones operate — realities understood and accepted by all but the most unaware— under the Katz analysis as applied in conjunction with the third-party-disclosure doctrine, cell phone users have neither a subjective expectation of privacy nor an objectively reasonable expectation of privacy regarding the cell site information generated by their cell phones.
Under Katz and its progeny there is— for good or for ill — an important distinction between a desire for privacy and a legitimate expectation of privacy. Individuals may very reasonably desire that information they provide to third parties — such as a cell service provider, a bank, or a credit card company — be kept private. But a strong desire for privacy is not equivalent to a legitimate expectation of privacy. And a strong desire for privacy does not provide a basis for this Court to abrogate the third-party-disclosure doctrine.
It is unquestionably true that cell site location information will ordinarily reveal significantly more information about the activities of a particular cell service subscriber than pen register data reveals concerning the activities of a telephone subscriber. It is likewise unquestionably true that credit card records will often reveal significantly more information about the activities of a credit card user than bank records reveal concerning the activities of a bank depositor. But the extent of information made available is not a factor in the application of the third-party-disclosure doctrine as it has been articulated in the decisions of the Supreme Court.
It may well be that the vast expansion of data provided by individuals to third parties — along with a widespread heightened concern regarding the privacy of that data — points to a need for reexamining the third-party-disclosure doctrine. Any such reexamination, however, is properly within the province of the Supreme Court. The Supreme Court gave us the third-party-disclosure doctrine, and if that doctrine is to be judicially altered, it should only be altered by the Supreme Court. “[U]nless and until the Supreme Court affirmatively revisits the third-party [disclosure] doctrine, the law is that a ‘person has no legitimate expectation of privacy in infor *529 mation he voluntarily turns over to third parties.’ ” Graham, 846 F.Supp.2d at 403.
Suppression of the cell site location information here is supported by the holdings in neither United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), nor United States v. Jones, — U.S.—, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). Both of these cases are readily distinguishable on the ground that they dealt with information provided by tracking devices placed by the government as distinct from information generated by the operation of a cell phone that the possessor of the cell phone chose to use. See Jones, 132 S.Ct. at 948; Karo, 468 U.S. at 708, 104 S.Ct. 3296. Jones may well raise questions about the future direction of the law in this area, but — as the majority’s discussion of Jones shows — the various opinions in Jones do not reflect any view endorsed by a majority of the justices that would condemn the police conduct at issue here as contrary to the Fourth Amendment. Jones simply provides no guidance to support the conclusion that the third-party-disclosure doctrine is inapplicable here.
The Fourth District’s decision to uphold the denial of Tracey’s motion to suppress should be approved, and Tracey’s conviction should not be disturbed.
POLSTON, J., concurs.