**UNITED STATES of America, Plaintiff,**

v.

**Jacob MARTIN, Armando Gomez-Leon, Jr., Martin Gomez-Leon, Victor Manuel Chavira and Raymond Gomez-Leon, Defendants.**

No. EP–85–CR–24.

United States District Court,
W.D. Texas,
El Paso Division.

May 6, 1985.

58

Thomas J. McHugh, Asst. U.S. Atty., El Paso, Tex., for plaintiff.

Frank T. Ivy, Austin, Tex., for Jacob Martin.

Joseph (SIB) Abraham, Jr. and Charles Roberts, El Paso, Tex., for Armando Gomez-Leon, Jr. and Martin Gomez-Leon.

Stanley Serwatka, El Paso, Tex., for Victor Manuel Chavira.

Scott Segall, El Paso, Tex., for Raymond Gomez-Leon.

## ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE

HUDSPETH, District Judge.

The five Defendants in this case were arrested on February 3, 1985 in the garage of a home at 3425 Tascosa in El Paso, Texas. When arrested, they were in the act of loading several hundred pounds of marihuana into the back of a Dodge van. Asserting that they were the victims of an illegal search and seizure, all Defendants have moved to suppress the marihuana as evidence in their trial.

In late January 1985, Agents of the Drug Enforcement Administration received information from a confidential informant that Defendant Jacob Martin had rented storage space at National Self-Storage, Inc. in El Paso, Texas, and that he was storing approximately 500 pounds of marihuana in that storage facility. Armed with an administrative subpoena, DEA Agents went to the National Self-Storage facility at 9447 Diana Drive in El Paso, and examined records which indicated that storage space had been rented in the maiden name of Martin's wife on January 26, 1985. Accompanied by the manager of the storage facility, the agents went to Storage Space No. E–75 and detected the distinctive odor of marihuana emanating from the door of the storage room. Surveillance was then established on the storage facility during all hours that it was open for the conduct of business.

On Sunday morning, February 3, 1985, DEA Agents on surveillance duty observed Defendants Jacob Martin and Victor Chavira drive a pickup truck into the storage facility and back it up to the door of Space No. E–75. As agents watched, Martin and Chavira proceeded to remove a number of full plastic garbage bags from the storage room and load them into the pickup. The agents knew from experience that marihuana is frequently packaged and transported in garbage bags of this type. After filling the bed of the pickup with the garbage bags, Martin and Chavira covered them with a tarpaulin so that they were not visible. At approximately 9:45 a.m., Martin and Chavira drove the pickup away from the storage facility and they were followed to the residence at 3425 Tascosa. Martin and Chavira were joined at the residence by a third man, who assisted them in opening the garage and backing the pickup truck inside. Since the garage door was left up, agents on surveillance were able to see Martin and Chavira unloading the garbage bags from the pickup inside the garage. A few minutes later, two new vehicles arrived at the residence: a green Chevrolet Nova and a yellow Dodge van. The occupants of these vehicles entered the garage through the open door. The agents then observed the pickup truck being moved to the other side of the garage, and the Dodge van being backed up to the open door. The van came to rest with the rear of the vehicle actually inside the garage door, and all five men were still inside the garage. Although the presence of the van made it more difficult to see inside the garage, agents on surveillance looking under and around it were able to see that the five men in the garage were loading the garbage bags in boxes of some type, and placing the boxes in the back of the Dodge van. Concluding that the marihuana was being loaded in the van for delivery elsewhere, the agents decided to seize the marihuana and arrest the Defendants. However, they were immediately faced with a practical problem, to wit: how to get into the garage without endangering their own safety or allowing the Defendants to escape. Direct entry through the garage door was not possible because it was effectively blocked by the presence of the Dodge van. Furthermore, it was not practical for the agents to announce their presence and demand that the Defendants surrender for at least two reasons. First, one or more of the Defendants might have escaped through the back of the house. Second, the agents had information that Martin had been heavily armed at the time of a previous arrest for drug violations. In light of the situation, therefore, Special Agent Seib of the DEA took a third course of action. He tried the front door of the house, and found that it was unlocked. Stepping inside, he observed a door into the garage no more than six feet from the front door of the house. He stepped through this door and advised the five Defendants that they were under arrest.

 It is clear from the outset that four of the five Defendants have no standing to challenge the search of the garage or the seizure of the marihuana. A defendant's Fourth Amendment rights cannot be violated by a search unless he has a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). While an ownership or possessory interest in the premises is not necessarily required, the mere legitimate presence on the searched premises by invitation or otherwise is not sufficient to create a protectable expectation of privacy. *Rakas v. Illinois, supra* at 142–43, 99 S.Ct. at 429–30; *United States v. Meyer*, 656 F.2d 979, 981 (5th Cir.1981), *cert. denied* —— U.S. ——, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983). Defendants Armando Gomez-Leon, Jr., Martin Gomez-Leon, Victor Manuel Chavira and Raymond Gomez-Leon have failed to show any interest in the premises at 3425 Tascosa which would confer upon them any standing to object to its search. Their motions to suppress evidence must be denied.

 Defendant Jacob Martin, on the other hand, took the witness stand at the hearing on this motion to suppress evidence and testified that he had "subleased"

the house and garage from the legal lessee, one Johnny Henderson, and had paid Henderson the sum of $200.00 for the right to use the house and garage for a period of one week. This testimony is sufficient to confer upon Martin the right to object to the search of the garage and the seizure of the marihuana.

No warrant was obtained by the agents prior to their seizure of the marihuana and the arrest of the Defendants. It is well-settled law that the warrantless entry into a home for the purpose of either arrest or search is prohibited by the Fourth Amendment unless both probable cause and exigent circumstances are present. *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 2093, 80 L.Ed.2d 732 (1984); *Payton v. New York*, 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980). In determining whether or not probable cause exists for a search by law enforcement officers, the Court must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Mendoza*, 722 F.2d 96 (5th Cir.1983). In this case, the Court finds that the informer's tip as supplemented by the officers' own investigation and personal observation furnished the probable cause necessary to search the van and the garage. The Court also finds that exigent circumstances existed which justified the failure of the officers to obtain a warrant in advance. The marihuana was in the process of being loaded into a movable vehicle, which was likely to be driven away at almost any given moment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Furthermore, Agent Seib was justified in gaining entrance to the garage through the front door of the house, because any other course of action would have exposed the agents to danger if any of the Defendants were armed. This was exactly the kind of "emergency or dangerous situation" that the Supreme Court describes as "exigent circumstances." To hold that Agent Seib violated the Fourth Amendment by taking a six-foot walk through the vestibule of an empty house to gain access to the garage under these circumstances would amount to a classic elevation of form over substance. Because the Court finds that both probable cause and exigent circumstances existed to justify this warrantless entry, the Defendants' motion to suppress evidence must be denied.

Defendant Martin also complains about the search of the records of National Self-Storage, Inc. without his consent. Martin has no standing to object to this inspection of the storage company's records. See *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

It is therefore ORDERED that the Defendants' Motion to Suppress Evidence in the above-styled and numbered cause be, and it is hereby, DENIED.