*519 WILLIAM PRYOR, Circuit Judge,
concurring:
I join the majority opinion in full, but I write separately to explain that a court order compélling a telephone company to disclose cell tower location information would not violate a cell phone user’s rights under the Fourth Amendment even in the absence of the protections afforded by the Stored Communications Act, 18 U.S.C. §§ 2701-2712, and as judges of an inferior court, we must leave to the Supreme Court the task of developing exceptions to the rules it has required us to apply.
It is well-established that “the application of the Fourth Amendment depends on whether the person invoking its protection can claim a ‘justifiable,’ a ‘reasonable,’ or a ‘legitimate expectation of privacy’ that has been invaded by government action.” Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (citations omitted). And the Supreme Court has made clear that “a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.” Id. at 743-44, 99 S.Ct. at 2582. There is no doubt that Davis voluntarily disclosed his location to a third party by using a cell phone to place or receive calls. For that reason, this appeal is easy.
Smith controls this appeal. In Smith, the Supreme Court held that, because telephone users voluntarily convey the phone numbers they dial to their telephone companies, the installation of a pen register at police request to record those numbers did not constitute a “search” under the Fourth Amendment. Id. at 742-46, 99 S.Ct. at 2581-83. But just as telephone users voluntarily convey the phone numbers they dial to a telephone company’s switching equipment, cell phone users too voluntarily convey their approximate location to a carrier’s cell towers.
To the extent that Smith is distinguishable from this appeal, Smith presents a closer question, because in this appeal the government did not request that MetroPCS maintain records of its customers’ cell phone calls. MetroPCS decided what business records to' maintain, and the government sought the records of Davis’s calls after the fact. And those records contained location information that Davis voluntarily conveyed to MetroPCS by placing calls that were routed through nearby cell towers, which are a familiar part of our landscape.
That Davis had no legitimate expectation of privacy in the information he conveyed to MetroPCS follows from a straightforward application of the third-party doctrine, completely aside from the additional protections of the Stored Communications Act. The Act provides that a court order for disclosure “shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the ... records or other information sought[ ] are relevant and material to an ongoing criminal investigation.” 18 U.S.C. § 2703(d). Davis does not dispute that the government complied with the Act. But the greater protections afforded telephone customers under the Act do not disturb the constitutional principle that “a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.” Smith, 442 U.S. at 743-44, 99 S.Ct. at 2582. So Davis would have no legitimate expectation of privacy in the information he conveyed to MetroPCS even if Congress repealed the Act tomorrow. A court order compelling a carrier to disclose cell tower location information does not violate a cell phone user’s rights under the Fourth Amendment any more than a court order compelling a bank to disclose customer account information, see *520 United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).
The dissent’s argument that Smith is distinguishable from this appeal because the disclosure of location information to cell carriers is less “voluntary” and less “knowing,” Dissenting Op. at 534-35, than the disclosure of dialed telephone numbers makes no sense. The dissent argues that the disclosure of location information is less “voluntary” than the disclosure of dialed telephone numbers because “cell phone users do not affirmatively enter their location in order to make a call,” Id. at 534, but in neither case is a phone user coerced to reveal anything. If a telephone caller does not want to reveal dialed numbers to the telephone company, he has another option: don’t place a call. If a cell phone user does not want to reveal his location to a cellular carrier, he also has another option: turn off the cell phone. That Davis had to disclose his location in order to place or receive a call does not distinguish this appeal from Smith, because, as the dissent admits, telephone callers “have to” convey dialed numbers to the telephone company in order to place calls, Dissenting Op. at 534. That a caller “affirmatively enter[s]” phone numbers but a cell phone user does not “affirmatively enter” his location when he places or receives a call may implicate the user’s knowledge that he is conveying information to a third party, but it does not make the latter disclosure less voluntary than the former. Davis’s disclosure of his location was also no less “knowing” than the disclosure at issue in Smith. In Smith, the Supreme Court explained that “[a]ll telephone users realize that they must ‘convey’ phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed.” 442 U.S. at 742, 99 S.Ct. at 2581. Similarly, cell phone users realize that their calls are routed through nearby cell towers. It is no state secret that cell phones work' less effectively in remote areas without cell towers nearby. As the Court made clear in Smith, that “most people may be oblivious to” the “esoteric functions” of a technology is consistent with most people having “some awareness” of its purpose. Id. at 742, 99 S.Ct. at 2581. In the light of common experience, it is “too much to believe,” id. at 743, 99 S.Ct. at 2581, that cell phone users lack “some awareness,” id. at 742, 99 S.Ct. at 2581, that they communicate information about their location to cell towers.
If the rapid development of technology has any implications for our interpretation of the. Fourth Amendment, it militates in favor of judicial caution, because Congress, not the judiciary, has the institutional competence to evaluate complex and evolving technologies.' “Judges cannot readily understand how ... technologies may develop, cannot easily appreciate context, and often cannot even recognize whether the facts of the case before them raise privacy implications that happen to be typical or atypical.” Orín S. Kerr, The Fourth Amendment and New Technologies: Constitutional Myths and the Case for Caution, 102 Mich. L.Rev. 801, 858-59 (2004). Our decisions resolve adversarial proceedings between parties. Legislatures, by contrast, must consider “a wide range” of factors and balance the opinions and demands of competing interest groups. Id. at 875. “The task, of generating balanced and nuanced rules requires a comprehensive understanding of technological facts. Legislatures are well-equipped to develop such understandings; courts generally are not.” Id. Simply put, we must apply the law and leave the task of developing new rules for rapidly changing technologies to the branch most capable of weighing the costs and benefits of doing so.
*521 As judges of an inferior court, we have no business in anticipating future decisions of the Supreme Court. If the third-party doctrine results in an unacceptable “slippery slope,” Dissenting Op. at 537, the Supreme Court can tell us as much. See, e.g., Hohn v. United States, 524 U.S. 236, 252-53, 118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998) (“Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.”); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”); Evans v. Sec’y, Fla. Dep’t of Corr., 699 F.3d 1249, 1263 (11th Cir.2012) (“We must not, to borrow Judge Hand’s felicitous words, ‘embrace the exhilarating opportunity of anticipating’ the overruling of a Supreme Court decision.”) (internal citation omitted). That is, if “the Supreme Court has given reasons to doubt the rule’s breadth,” Dissenting Op. at 535, it alone must decide the exceptions to its rule.
JORDAN, Circuit Judge, concurring, in which WILSON, Circuit Judge, joins:
This case is certainly about the present, but it is also potentially about the future. Although the Court limits its decision to the world (and technology) as we knew it in 2010, see Maj. Op. at 503-04 n. 7 & 513 n. 13, its holding that Mr. Davis lacked an expectation of privacy in service provider records used to establish his cell 'site location may have implications going forward, particularly given the Court’s reliance on the third-party doctrine. See, e.g., Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); United States v. Miller, 425 U.S. 435, 442-43, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). As technology advances, location information from cellphones (and, of course, smartphones) will undoubtedly become more precise and easier to obtain, see generally Planet of the Phones, THE ECONOMIST (Feb. 28, 2015), and if there is no expectation of privacy here, I have some concerns about the government being able to conduct 24/7 electronic tracking (live or historical) in ■the years to come without an appropriate judicial order. And I do not think I am alone in this respect. See United States v. Jones, — U.S. -, 132 S.Ct. 945, 964, 181 L.Ed.2d 911 (2012) (Alito, J., concurring, joined by Ginsburg, Breyer, and Kagan, JJ.) (“[T]he use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.”); id. at 955 (Sotomayor, J., concurring) (“I agree with Justice Alito that, at the very least, ‘longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.’ ”).[1]
As a result, I would decide the Fourth Amendment question on reasonableness grounds and leave the broader expectation of privacy issues for another day, much like- the Supreme Court did in City of *522 Ontario v. Quon, 560 U.S. 746, 759-60, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) (assuming that police officer had an expectation of privacy in text messages he sent from his city-provided pager, even though those messages were routed through and kept by a third-party service provider, and resolving the case on reasonableness grounds). I would assume that Mr. Davis had a reasonable expectation of privacy— albeit a diminished one — and hold that the government satisfied the Fourth Amendment’s reasonableness requirement by using the procedures set forth in 18 U.S.C. § 2703(d) to obtain a court order for Mr. Davis’ cell site records.
I
The Fourth Amendment’s “basic purpose ... is to safeguard the privacy and security of individuals, against arbitrary invasions by. governmental officials.” Camara v. Mun. Court of City & Cnty. of S.F., 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). “As the text of the Fourth Amendment-indicates, the ultimate measure of the constitutionality of a governmental search is ‘reasonableness.’ ” Maryland v. King, — U.S. -, 133 S.Ct. 1958, 1969, 186 L.Ed.2d 1 (2013) (citation and internal punctuation omitted).
“The reasonableness of a search,” the Supreme Court recently explained, “depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which' the search intrudes upon reasonable privacy expectations.” Grady v. North Carolina, — U.S. -, 135 S.Ct. 1368, 1371, 191 L.Ed.2d 459 (2015). These circumstances include, among others, “the means adopted” by the government to effectuate the search. See Carroll v. United States, 267 U.S. 132,168, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
II
At times, circumstances may render a warrantless search or seizure reasonable. One such scenario is when there are “diminished expectations of privacy.” King, 133 S.Ct. at 1969 (citation and internal punctuation omitted). Although I am prepared to assume that Mr. Davis enjoyed some expectation of privacy, cf. Stephen J. SCHÚLHOFER, MORE ESSENTIAL THAN EVER: The Fourth Amendment in the Twenty-First Century 8 (2012) (defining privacy, in today’s digital world, in terms of control rather than secrecy, because practical necessities now require individuals to share information about themselves “with trusted individuals and institutions for limited purposes”), I think it is fair to say that such an expectation was somewhat diminished, and not full-throated, due to the third-party doctrine. After all, Smith indicates that a person gives up control of certain information when he makes and receives calls from a phone. Although Smith does not fit this case like a glove— cellphones and smartphones (and the vast amounts of information they contain and can generate) are qualitatively different from land-line phones — it is nevertheless relevant that the cell site information the government obtained existed due to calls Mr. Davis made and received on his cellphone.[2]
On the other side of the ledger, Mr. Davis’ cell site information was not ob-
*523 tained or seized “outside the judicial process, without prior approval by a judge or magistrate.” Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Cf. Johnson v. United States, 333 U.S. 10, 13-14, 68 S,Ct. 367, 92 L.Ed. 436 (1948) (noting that the Fourth Amendment’s “protection consists in requiring that ... inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime”). The government secured the cell site records under a provision of the Stored Communications Act. And that provision requires a magistrate judge — a neutral judicial officer — to review an application and determine whether the government has offered “specific and articulable facts showing that there are reasonable grounds to believe that the [cell cite location information] sought [is] relevant and material to an ongoing criminal investigation.” 18 U.S'.C. § 2703(d). Significantly, “there is a strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is ‘reasonable!,]’ ” United States v. Watson, 423 U.S. 411, 416, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (citation and some internal punctuation omitted), and this strong presumption attaches to § 2703(d).
As explained briefly below, the government articulated the necessary “specific and articulable facts.” I therefore agree with the Court that the magistrate judge’s order, which authorized the government to obtain the cell site information, satisfied the reasonableness requirement of the Fourth Amendment. See Camara, 387 U.S. at 528, 87 S.Ct. 1727.[3]
The government’s application for Mr. Davis’ cell site information stated the following: Willie Smith confessed that he and Mr. Davis were involved in the robberies of a Little Caesar’s restaurant, the Universal Beauty Salon, and a Wendy’s restaurant in Miami, Florida; Jamarquis Terrell Reid admitted that he had participated with Mr. Davis in the robberies of an Amerika gas station, a Walgreens store, and an Advance Auto Parts store in Miami, Florida; Michael Martin told the authorities that he and Mr. Davis had robbed a Mayor’s jewelry store in Weston, Florida; Mr. Davis’ DNA was recovered from a stolen BMW that was used as the getaway car in the Mayor’s jewelry store robbery; the robberies in question took place between August 7, 2010, and October 1, 2010; and Mr. Smith and Mr. Reid each said that, at the time of certain of the robberies (those of the Little Caesar’s restaurant, the Amerika gas station, the Advance Auto Parts store, and the Universal Beauty Salon), Mr. Davis’ cellphone number was the 5642 number. Not surprisingly, Mr. Davis conceded at oral argument that the government could have secured a warrant (had it elected to do so) for the cell site information because it had the necessary probable cause.
*524 The temporal scope of the request, moreover, was reasonable. The government sought cell site information spanning from August 1, 2010, to October 6, 2010 — a 67-day period which began six days before the first known robbery and ended six days after the last known robbery. The government explained in its application that those records would “assist law enforcement in determining the locations of [Mr. Davis] on days when robberies in which [he was] suspected to have participated occurred,” and “whether [he] communicated with [the] other [individuals] on the days of the robberies and, if so, how many times.”
Finally, it is important to reiterate that the cell site information was generated from calls Mr. Davis made and received on his cellphone, and was not the result of his merely having his cellphone turned on. There was, in other words, no passive tracking based on Mr. Davis’ mere possession of a cellphone, and I do not read the Court’s opinion as addressing such a situation. See Maj. Op. at 502, 512.
Ill
For me, this is one of those cases where it makes sense to say less and decide less. See Cass R. Sunstein, One Case at a Time 4-10 (1999); Alexander M. Bickel, The Least Dangerous Branch 111-13 (1st ed.1962). “Prudence counsels caution before the facts in the instant case are used to establish ... premises that define the existence, and extent, of privacy expectations.” Quon, 560 U.S. at 759, 130 S.Ct. 2619.
With these thoughts, I join Parts I, II, III.G, and IV of the Court’s opinion and concur in the judgment.

. Three decades ago, a defendant in a case before the Supreme Court argued that allowing the police to place a digital beeper in a container filled with chloroform, in order to monitor the container's location, would lead to "twenty-four hour surveillance of any citizen in this country ... without judicial knowledge or supervision.” United States v. Knotts, 460 U.S. 276, 283-84, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). The Supreme Court's response to that assertion was that “if such dragnet type law enforcement practices as [the defendant] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable.” Id.

. I recognize that some of the cell site information resulted from calls Mr. Davis received but never answered. For obvious reasons, however, Mr. Davis did not make (and has not made) a nuanced Fourth Amendment argument differentiating between data generated from calls he made and answered and data generated from calls he merely received without answering. Such an argument would not • have been of much help to Mr. Davis, who sought to suppress all of the cell site data the government obtained.

. For whatever it is worth, the Supreme Court has on occasion held that the phrase "reasonable grounds,” as used in certain federal narcotics laws, is essentially the same as "probable cause” for purposes of the Fourth Amendment. See Draper v. United States, 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Wong Sun v. United States, 371 U.S. 471, 478 n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). And it has said that "[t]he substance of all the definitions of probable' cause is a reasonable ground for belief of guilt.” Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citation and internal punctuation omitted). So maybe the evidentiary showing required by § 2703(d) is not too far removed from the probable cause normally demanded for warrants under the Fourth Amendment. But cf. Griffin v. Wisconsin, 483 U.S. 868, 872-77, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (differentiating between "reasonable grounds” standard and “probable cause” standard).