

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0669-23

---

### AARON RAYSHAN WELLS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

FINLEY, J., filed a concurring opinion in which PARKER, J., joined.

### <u>CONCURRING OPINION</u>

I agree with the Court's judgment today affirming the judgment of the court of appeals below. I also join Judge Yeary's opinion that explains why the State's geofence warrant was constitutional. Both Judge Yeary and the court of appeals below assumed, without deciding, that law enforcement obtaining cell phone location history data from Google was a "search" under the Fourth

Amendment. Notwithstanding my joining Judge Yeary's opinion today that would uphold the constitutionality of the geofence warrant, I write separately to explain that, in my view, we do not need to reach that issue: Law enforcement did not conduct an unreasonable search under the Fourth Amendment because Appellant did not have a reasonable expectation of privacy in the information he voluntarily turned over to a third party.

## I.    Applicable Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "A Fourth Amendment privacy interest is infringed when the government physically intrudes on a constitutionally protected area or when the government violates a person's 'reasonable expectation of privacy.'" *United States v. Smith*, 110 F.4th 817, 830 (5th Cir. 2024) (quoting *United States v. Jones*, 565 U.S. 400, 406 (2012)). To determine whether a "reasonable expectation of privacy exists," Justice Harlan's two-step approach articulated in his concurring opinion in *Katz v. United States*, 389 U.S. 347 (1967), controls. *See Jones*, 565 U.S. at 406. A defendant must show (1) that he had a subjective expectation of privacy; and (2) that his subjective expectation of privacy is one that society recognizes, or is prepared to recognize, as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

The Supreme Court of the United States has applied the reasonable expectation of privacy test to electronic information in several cases. In *United States v. Knotts*, 460 U.S. 276 (1983), for example, the Court held that the use of "beeper" information to track a vehicle's movements was not a Fourth Amendment search. 460 U.S. at 281. The Court emphasized that the movements of Knott's vehicle and its final destination had been voluntarily conveyed to anyone who wanted to look, and therefore he could not assert a privacy interest in the information obtained. *Id.* Three decades later, the Court decided *United States v. Jones*, 565 U.S. 400 (2012). There, the Court addressed whether the remote monitoring of a vehicle's movements via an attached GPS tracking device for twenty-eight days violated a person's legitimate expectation of privacy. 565 U.S. at 402–04. Applying a physical-trespass theory (instead of *Katz*'s expectation-of-privacy analysis), a majority of the Court said yes. *Id.* at 410–11.

Other cases are equally instructive. In *United States v. Miller*, 425 U.S. 435 (1976), the Court held that the government did not conduct a search when it obtained an individual's bank records from his bank, since he voluntarily exposed those records to the bank in the ordinary course of business. 425 U.S. at 443. Finally, in *Smith*, the Court held that the government did not conduct a search when it used a pen register to record outgoing phone numbers dialed

from a person's telephone, because he voluntarily conveyed those numbers to his phone company when placing calls. 442 U.S. at 742.

Then came *Carpenter v. United States*, 585 U.S. 296 (2018). In *Carpenter*, the Court addressed whether a person has a legitimate expectation of privacy in historical cell-site location information (CSLI) records. *Id.* at 303. The Court concluded that the defendant had a reasonable expectation of privacy in his historical CSLI, and the government violated the Fourth Amendment when it searched the location records without a warrant supported by probable cause. *Id.* at 316–17. Critically, the Court emphasized that the defendant had not voluntarily turned over his CSLI to a cell phone provider as understood in *Miller* and *Smith*. *Id.* at 309.

This Court has addressed CSLI in several cases. *Sims v. State*, 569 S.W.3d 634 (Tex. Crim. App. 2019), was the first time, and this Court held that an individual "did not have a legitimate expectation of privacy in his physical movements or his location as reflected in the less than three hours of real-time CSLI records accessed by police by pinging his phone less than five times." 569 S.W.3d at 646. A year later, in *Holder v. State*, 595 S.W.3d 691 (Tex. Crim. App. 2020), this Court held that accessing "23 days" of CSLI violated Article I, Section 9 of the Texas Constitution. 595 S.W.3d at 704. Prior to *Carpenter*, this Court also addressed searches of CSLI records in *Ford v. State*, 477 S.W.3d 321

(Tex. Crim. App. 2015), and *Love v. State*, 543 S.W.3d 835 (Tex. Crim. App. 2016). [1]

Turning to Google's location history data, in *United States v. Chatrie*, 107 F.4th 319 (4th Cir. 2024), the Fourth Circuit held that the government "did not conduct a search when it obtained [the location history] data" of an individual. 107 F.4th at 332. The Fourth Circuit first distinguished location history data from CSLI, noting that location history data is not an "all-encompassing record of whereabouts," rather, the information is "far less revealing" and limited to a "single, brief trip." *Id.* at 330. Next, the Fourth Circuit noted that the appellant "voluntarily exposed his location information to Google" and did so knowingly, having been warned of the consequences when he opted into Google's services. *Id.* at 331. Thus, the Fourth Circuit concluded that the third-party doctrine governed the case, so the appellant could not claim a reasonable expectation of privacy in the information voluntarily exposed to Google. *Id.*

The Fifth Circuit soon after disagreed. In *United States v. Smith*, 110 F.4th 817 (5th Cir. 2024), the Fifth Circuit held that geofence warrants "are general warrants categorically prohibited by the Fourth Amendment." 110

---

[1] Both cases upheld multi-day searches of CSLI but were likely abrogated by this Court's decision in *Holder* because both were decided pre-*Carpenter*.

F.4th at 838. The Fifth Circuit rejected *Chatrie* and held that "geofence location data is invasive for Fourth Amendment purposes." *Id.* at 834. For the Fifth Circuit, the question was whether location history data "ha[d] the capability of revealing intimate, private details about a person's life," not whether the search itself did. *Id.* at 834 n.8. The Fifth Circuit then held that the third-party doctrine did not apply because, while an individual does "opt in" to the services, the decision to opt in is "hardly informed and, in many instances, may not even be voluntary." *Id.* Concluding that a search had occurred, the Fifth Circuit then held that geofence warrants were unconstitutional general warrants because the actual database search (at Step 1 of the process), involved a search of the entire Google repository—as the Fifth Circuit described it, "general, exploratory rummaging." *Id.* at 837. Nevertheless, applying the good-faith exception to the exclusionary rule, the Fifth Circuit affirmed the district court's denial of the motion to suppress. *Id.* at 840.[2]

---

[2] Assuming, *arguendo*, that the warrant in this case is invalid, the good faith exception applies here as well. Here, law enforcement was using cutting-edge technology that, prior to this investigation, was unknown to them. Further, at the time law enforcement obtained and executed the warrant, there was no authority— much less any published authority—on geofence warrants. And law enforcement acted reasonably and with prudence: They wrote the warrant as narrowly tailored, both geographically and temporally, as they could, and they sought an additional warrant for the personal identifying information after the first anonymized list was provided by Google.

## II.   Analysis

### a. Google's Location History Data is *not* CSLI.

*Carpenter* described CSLI as "an all-encompassing record of the [device] holder's whereabouts," that "provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Carpenter*, 585 U.S. at 311 (citing *Jones*, 565 U.S. at 415) (internal quotations omitted). A cell phone "tracks nearly exactly the movements of its owner . . . faithfully follow[ing] . . . beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* Since a person has a reasonable expectation of privacy in the whole of their physical movements, it follows that location information obtained from the tracker in one's pocket via wireless carriers was the product of a search.

But location history data is noticeably different. A geofence warrant reveals no more than "an individual trip viewed in isolation." *Chatrie*, 107 F.4th at 330 (quoting *Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 342 (4th Cir. 2021) (en banc)). The information obtained is more akin to the short-term public movements in *Knotts*, or the short-term CSLI records this Court analyzed in *Sims*, rather than the records in *Carpenter* and *Jones*. I cannot say

that Appellant had a legitimate expectation of privacy in his location records for the limited timeframe the State sought in this case.

### b. The information was voluntarily exposed.

As the Supreme Court correctly recognized in *Carpenter*, "[c]ell phone location information is not truly 'shared' as one normally understands the term." 585 U.S. at 315. Importantly, "a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the part of the user beyond powering up." *Id*. "[A]part from disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data." *Id*. Thus, "in no meaningful sense does the user voluntarily assume the risk of turning over a comprehensive dossier of his physical movements." *Id*. (citing *Smith*, 442 U.S. at 745).

Not so, here. As the record in this case makes clear, when a user does not affirmatively turn on the location history settings, a mobile device's location will not be automatically saved. Appellant undertook affirmative steps on his Android device to enable location sharing: He logged in to his Google account on the device and opted in to the Location History services in the account's settings. He also had to click through several warning screens that admonished him of the consequences of opting in. Those consequences included, as relevant here, Google collecting and tracking Appellant's location history and sharing

that data with additional third-parties, *inter alia*, advertisers.[3] After providing consent to Google, Appellant still retained ultimate control over both his settings (he could limit or disable Location History at any time), and the data collected by Google (he could edit or delete any location history data through his Timeline). At any time, Appellant had the ability to cease sharing his location history information with Google and withdraw his consent for Google to share that information with other third parties. Thus, Appellant voluntarily exposed his location to Google. The Fourth Circuit in *Chatrie* put it best: "If Google compiles a record of [a user's] whereabouts, it is only because he has authorized Google to do so." 107 F.4th at 331. I cannot say that Appellant had a reasonable expectation of privacy in information he voluntarily turned over to a third party.

### III.  Conclusion

I agree with the Court's judgment to affirm the judgment of the court of appeals. I only write separately to express my view that Appellant did not have

---

[3]  *See* State's Pretrial Exh. 7, at 17 ("Advertising: Google processes information, including online identifiers and information about your interactions with advertisements, to provide advertising. This keeps Google's services and many of the websites and services you use free of charge. You can control what information we use to show you ads by visiting your ad settings."); *see also Chatrie*, 107 F.4th at 322 ("But Google uses and benefits from a user opting in, too—mostly in the form of advertising revenue. Google uses Location History to show businesses whether people who viewed an advertisement visited their stores. It similarly allows businesses to send targeted advertisements to people in their stores' proximity.")

a reasonable expectation of privacy in information that he voluntarily turned over to Google. Law enforcement did not need a warrant to obtain that information. With these thoughts, I join the Court's judgment.

Filed: April 2, 2025
Publish